## R. M. Brown v. The State.

### No. 253.   Decided December 8, 1909.

### Rehearing denied January 12, 1910.

**1.—Theft of Horse—Substituting Lost Indictment—Limitation—Statutes Con-strued—Bailment.**

Upon trial for theft of a horse by conversion under bailment, where the State was permitted to substitute a copy of the original indictment which was alleged to have been lost, it was not necessary for the State to set out in the motion to substitute the date at which the original indictment was lost, as the statute of limitation did not apply. Limitation under article 470, Code Criminal Pro-cedure, which provides that the period for the commencement of the prosecution shall begin at the time of the entry of the indictment, applies to new indict-ments, and not to the substitution of lost indictments.

**2.—Same—Definition of Offense—Repeal of Statute—Statute Construed.**

Where the defendant was indicted for the theft of a horse by fraudulent con-version under bailment, under article 877, Penal Code, which provides punish-ment as for theft of like property, the amendment of article 881, Penal Code, changing the punishment for theft of a horse under a later Act of the Legisla-ture, after the passage of said article 877, did not repeal or abrogate the punish-ment for theft as a bailee, and the punishment for such offense would be ac-cording to the terms of the latter statute.

### 3.—Same—Charge of Court—Flight.

Where, upon trial for theft of a horse, the State showed that, after defendant was first indicted, he left the State, and remained away for several years, forfeiting his bail bond, and the defense sought to explain this matter by showing that defendant was informed by his counsel that his case was to be dismissed, there was no error in the court's refusal to charge on this phase of the evidence, as it was a matter of fact for the jury.

### 4.—Same—Venue—Conversion—Charge of Court.

Where, upon trial for theft as bailee, the evidence showed that the alleged horse was hired in the county of the prosecution, and an attempt to sell him occurred in another county, and the court properly instructed the jury that, if the conversion took place in the latter county, to acquit the defendant, and also to acquit the defendant if it appeared beyond reasonable doubt that the conversion did not take place in the county of the prosecution, there was no error in refusing a special charge on this matter.

### 5.—Same—Charge of Court—Accomplice's Testimony.

Where, upon trial for theft of a horse, the State partially relied on the testimony of an accomplice, and the court charged the jury that they must find first that such accomplice's testimony was true, and showed the guilt of the defendant, and even then not to convict unless such testimony is corroborated by other evidence tending to connect the defendant with the offense, and in case of reasonable doubt to acquit him, there was no error.

Appeal from the District Court of Kaufman. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of theft of a horse as bailee; penalty, two years imprisonment in the penitentiary.

The State's testimony showed that defendant and R. E. Adams hired the alleged horse for a couple of days in Kaufman County, and stated that they were going to a place named Poetry; that instead of going to said place they changed their course and went to Grand Saline in Van Zandt County, and there attempted to dispose of the horse, when the owner was apprised of this fact and recovered the horse there; that they were attempting to auction off the horse and were both arrested and taken back to Kaufman County, where they were indicted; that Adams plead guilty, was sentenced to the penitentiary and afterwards pardoned; that defendant forfeited his bond and left the State, and returning thereto several years later was re-arrested.

The owners of the horse testified that both defendant and Adams acted together in hiring the horse, and another State's witness testified that they both acted together in attempting to dispose of the horse in Van Zandt County. R. E. Adams, who became a State's witness testified that defendant hired the horse, and made the proposition to sell it, get the money and go to Tennessee, and that Adams agreed to it; that they went to Grand Saline together with the horse and there attempted to dispose of it by auction, when they were arrested.

The defendant testified that R. E. Adams came to him and wanted him to take him out of the county; that they hired the horse and

buggy from the alleged owners to take Adams out of the county, in order to keep the officers from catching him; that Adams hired the horse and buggy and paid for it, and that there was never any intention on defendant's part to run away with the horse; that defendant was only 18 years of age at the time; that on the way to Grand Saline defendant stated that the whole rig would not bring $50 and Adams bet the drinks that it would, and defendant bet his pocketknife; when they got to Grand Saline they got the city marshal to put up the horse for sale, and about that time they were arrested; that defendant had no intention to actually sell the horse, and did not think that Adams actually intended to do so; that defendant had no intention at any time to convert the horse to his own use, but was simply helping Adams to get away from the officers; that he would not have left the State had his counsel not advised him that the codefendant would plead guilty and the case against defendant would be dismissed. Other facts are stated in the opinion.

*Woods & Morrow,* for appellant.—On the question of the repeal of the law: Smith v. State, 7 Texas Crim. Rep., 286; Marston v. Yaites, 66 S. W. Rep., 867. On question of defendant's departure from the State: James v. State, 32 Texas Crim. Rep., 509; Scott v. State, 10 Texas Crim. App., 112; Mundine v. State, 37 Texas Crim. Rep., 5. On question of court's failure to charge properly on place of conversion: Abbey v. State, 35 Texas Crim. Rep., 589.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appellant, R. M. Brown, was convicted in the District Court of Kaufman County on June 8, of this year, on a charge of theft and his punishment assessed at confinement in the penitentiary for two years.

He has prosecuted his appeal to this court and has raised a number of questions which are both interesting and difficult, and has supported his contention by a well considered brief, as well as an able argument on oral submission. We have, however, on a careful examination and reflection arrived at the conviction that none of the errors assigned are well taken, and that the case should be affirmed.

1. It appears from the record that the indictment originally presented in the case was returned on the 14th day of February, 1902. This indictment, at some period, left somewhat in doubt in the evidence, was lost. It seems, however, to have disappeared several years ago and we think the assumption is safe that it has not been seen for more than four years, and probably for more than five years before the State sought to substitute same. However, the State did file its motion on the 11th day of January, of this year, in which it was sought to substitute the said lost indictment, with the averment

that the original had been lost and that the copy attached to the motion was a substantially true copy of the original indictment. To the action of the State in seeking to substitute the indictment, appellant excepted for the reason that the motion did not set out or allege any date about which such indictment was lost so as to show that the right to substitute was not barred by the statute of limitations. Counsel for appellant further answered by a general denial and especially denied the right of the county attorney to substitute the indictment, for that if any indictment ever existed that same had been lost without appellant's fault for a period of more than five years next before the filing of said motion to substitute the same, and that the right to substitute is barred by the statute of limitations of five years. Appellant further pleaded the statute of limitation of four years. The court, on the 23d day of January, 1909, on proof, substituted the indictment and the trial proceeded on such substituted indictment. The action of the court touching this matter is preserved in a proper bill of exceptions. The bill tendered recites that the evidence showed that the indictment had been lost in January, 1903, and that this fact was known to the district clerk, sheriff and county attorney of Kaufman County as early as that date, and appellant excepted to the pleading and proof as well as the action of the court in substituting the indictment, for the reason that same is barred by the statute of limitation of four years. This bill is approved with this explanation: "The defendant was never arrested under the indictment, but before same was returned, forfeited his appearance bond and was never re-arrested until in December, 1908, at which time the present county attorney first discovered the loss of said indictment." Article 470 of the Code of Criminal Procedure is as follows: "When an indictment or information has been lost, mislaid, mutilated or obliterated, the district or county attorney may suggest the fact to the court, and in such case another indictment or information may be substituted upon the written statement of the district or county attorney, that it is substantially the same as that which has been lost, mislaid, mutilated or obliterated. Or another indictment may be presented, as in the first instance, and in such case the period for the commencement of the prosecution shall be dated from the time of making such entry." It will be observed that by the language of the statute that limitation will only run in the case of the presentment of a new indictment. We think the language of the statute itself clearly indicates that this provision of the statute, in regard to limitation, was intended to apply only in cases where a new indictment was sought to be found. We think, indeed, on general principles, in the absence of such a provision this would be the rule. The substitution of an indictment or other paper in a pending case is not the institution of a new suit, or a new prosecution. It is merely an ancillary proceeding in the action then pend-

ing. The presentment of a new indictment, of course, requires the action of a grand jury and presumably it would require the introduction before them of the evidence, an ascertainment that a crime had been committed and their presentment of the person committing same before the court in due order. It was not intended, we think, by our Code that this rule should apply where it was merely sought to substitute an indictment already found. We think, by analogy, the rule in civil cases would apply. If, let us say, an action had been brought on a note a short time before it would be barred by limitation, and thereupon the petition was lost, could it be successfully contended that the action and ground of recovery would be lost, because the motion to substitute had been filed at a time when, if it were to be treated as a new suit, the cause of action would be barred by limitation. We can not think so. On the other hand it is clear that if in such a case, instead of attempting to substitute, a new suit were instituted that limitation would apply. This rule, we think, the Legislature intended in respect to criminal cases. In other words, if the original indictment were returned at a time when the offense was not barred, it can not avail a defendant if the indictment becomes lost that a motion to substitute was entertained at a time when, if treated as a new prosecution, the offense would be barred.

The next question raised on the appeal is that under the law no penalty is attached to the offense with which appellant is here charged. By article 881, Penal Code, it is provided that, "If any person shall steal any horse, ass or mule, he shall be punished by confinement in the penitentiary not less than five nor more than fifteen years." By the Act of the Twenty-fifth Legislature, March 26, 1897, page 83, it was provided that the punishment for this offense should not be less than two nor more than ten years. Article 877 of the Penal Code, passed March 8, 1887, is as follows: "Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as prescribed in the Penal Code for theft of like property." The argument is made that inasmuch as the provision of the Code under which this prosecution is being urged, was passed at a time when the punishment for theft of a horse was not less than five nor more than fifteen years, that when this article was amended and a different punishment prescribed, after the passage of article 877, that this had the effect to repeal and abrogate the punishment for theft as bailee, and that there being no punishment for the offense and no legal penalty prescribed, that no prosecution under this article could be sustained. We think this argument is unsound and the position untenable for the reason that the effect of article 877 was merely to declare that conversion

by bailee is theft and should receive the same punishment as the law fixed for the theft of the same property by a fraudulent taking without consent, and that the clear meaning of the language "and such punishment as prescribed by the Penal Code for theft of like property," was to attach a like punishment, whatever that punishment might be at any given time.

3. In this case it seems that soon after appellant was first indicted he left the State and remained away for several years, forfeiting his bail bond, and that proof of such flight and the forfeiture of his bail bond, were made as circumstances against him. He became a witness in his own behalf and in the course of his testimony stated that the occasion of his departure from the State was due to the fact that he had been advised by his counsel that one Adams, a co-defendant and co-actor in the offense would plead guilty and the prosecution against him would be dismissed. In this state of the evidence counsel for appellant requested the court to instruct the jury that if they believed the appellant was informed by his counsel that his case was to be dismissed and that his codefendant would plead guilty, and defendant believed same to be true, then the forfeiture of his bail bond afterwards would not be considered as a fact against him. That appellant's flight and forfeiture of his bail bond were admissible as a circumstance against him is not to be denied; that his explanation of this fact was admissible as a circumstance in his favor is also well settled. It was not, however, proper that the court should have referred, in his charge, to the fact of such forfeiture, or to his explanation and justification thereof. These were facts to be considered by the jury and the court was not called upon, nor would it indeed have been proper for him to have singled out either the incriminating fact against defendant, or his explanation justifying his conduct.

4. Again, counsel complain that the court erred in refusing his special charge to the effect that if he did not have the intent to convert the horse, and that R. E. Adams hired same, but afterwards, while in Van Zandt County, appellant assented to the fraudulent conversion thereof, the jury should acquit the defendant; and if the jury have a reasonable doubt on this point they should acquit him. In support of this proposition we are referred to the case of Abby v. State, 35 Texas Crim. Rep., 589. We think, under the testimony in this case, it would inevitably result that if this charge had not in substance been given that a reversal should be ordered. However, an inspection of the court's charge, as we believe, covered this question and was probably more favorable to appellant than the charge requested by him. In the first place, in submitting the issue as a basis of conviction, the jury are required to find a conversion to have occurred in Kaufman County; then the court thus instructs the jury: "If you believe the horse in question was hired by R. E. Adams alone, and that defendant did not participate in the hiring thereof,

then you will acquit the defendant, even though you may also believe from the evidence beyond a reasonable doubt that the horse was converted in Kaufman County, and that defendant was a party to the conversion." Again, the court gave this charge: "If the horse in question was hired by defendant from Luther Kines in Kaufman County, Texas, and defendant afterwards in Van Zandt County, conceived the idea and intent to fraudulently convert said horse, and did so convert him in said Van Zandt County to his own use, then you must acquit the defendant because this county would have no jurisdiction if the conversion, if any there was, did not occur in Kaufman County." Thus, all together, we think this was a fair and clear submission of appellant's contention, and that no further instruction touching the matter was required, or indeed, would have been proper.

5. The next ground of complaint is in respect to the charge of the court on the subject of accomplice. Touching this matter the court gave this instruction: "A conviction can not be had upon the testimony of an accomplice unless the jury first believe that the accomplice's evidence is true and that it shows the defendant is guilty of the offense charged against him, and even then you can not convict unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission. You are charged that R. E. Adams was an accomplice if any offense was committed, and you are instructed that you can not find the defendant guilty upon his testimony unless you first believe that the testimony of said Adams is true and that it shows the defendant is guilty as charged in the indictment; and even then you can not convict the defendant unless you further believe that there is other evidence in the case outside of the evidence of said Adams, tending to connect the defendant with the commission of the offense charged in the indictment and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty." It is complained that this charge, as framed, is upon the weight of the evidence and goes beyond the plain words of the statute and is confusing to the jury, misleading and erroneous in that it impresses the jury that by reason of its construction that a less quantum of proof is required to convict than is required by statute. We can not agree with counsel in these criticisms. The charge of the court contains every essential necessary to be charged, and is, indeed, rather a more favorable presentation of the issue than appellant was entitled to receive. The jury could not have been misled by the charge. In the first place, it instructs the jury that Adams is an accomplice in the offense, if one was committed; that they can not convict unless they believe his testimony is true and that same shows that appellant

is guilty, and can not, even then, convict unless there is other evidence tending to connect appellant with the commission of the offense charged, and finally that no conviction can, in any event, be had unless they believe him guilty beyond a reasonable doubt. The charge, we think, leaves appellant without possible ground of complaint.

The evidence is sufficient, if believed, to sustain the verdict of the jury. After a careful examination of all the questions raised, we find no error in the record, and the judgment of conviction is therefore, affirmed.

*Affirmed.*

[Rehearing denied January 12, 1910.—Reporter.]