COUNTRY TOM ROBINSON v. THE STATE.

No. 21492. Delivered March 19, 1941.

The opinion states the case.

*Reed & Cannon,* of Groesbeck, and *H. S. Beard,* of Waco, for appellant.

*L. L. Geren,* County Attorney, *J. B. Engledow* and *Clarence Ferguson,* Assistant County Attorneys, and *L. W. Shepperd,* Special Prosecutor, all of Groesbeck, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted for knowingly receiving and concealing stolen property, and the jury assessed his penalty at two years in the penitentiary.

The State's main proof consisted of the testimony of confessed accomplices.

It is shown that the warehouse of the Magnolia Petroleum Co. in Groesbeck was burglarized on the night of July 17, 1940, and a quantity of lubricating oil and grease taken therefrom. The two accomplices both swore that they took this quantity of oil and grease to appellant's home in the nighttime, and he bought same from them, paying them therefor a price proven to be much less than their fair value. The State then showed by a negro, Ollie Busby, that at about three o'clock in the morning, sometime about the middle of July of that year, appellant came to where Busby was living on appellant's place and awakened Busby, and told him that he was going to "stash" some oil. From the context we infer that the word "stash" means to hide, conceal or dispose of this oil. Busby demurred but finally went with appellant and hid this oil that was at such time in appellant's pickup truck. After hiding this oil, which was in cans, contained in cases, the two came back to appellant's home and emptied some of these small cans into a large five gallon can, and afterwards the negro Busby, under appellant's instructions, burned these small cans in appellant's hog pasture. Later on the officers came to this negro's house and he took them and showed them where the oil had been hidden, and some of these cases of oil were recovered and brought into court and identified as a portion of the stolen oil. There were also found some burned cans where the negro said they were located, and the officers also found some oil in a five gallon can near appellant's home. Busby's wife and mother-in-law also testified as to appellant's three o'clock in the morning trip to Busby's house, and one of them testified that appellant told Busby that "he wanted him to go with him and help him to

put away some stuff," and that appellant threatened to kill Busby if he did not go with him.

Appellant did not take the stand, and offered only one witness, his wife, who testified only to certain matters in an attempted impeachment of Busby's wife and mother-in-law. She did leave an inference, however, that appellant had some land rented from a Mr. Simmons, and upon Mr. Simmons' land was found a portion of the stolen oil.

Appellant complains because of an alleged variance between the allegation and the proof in that the stolen property was alleged to have been that of E. M. Jones whereas he says that such property was that of J. T. Jones, and that the proof failed to correspond to the allegation. The testimony shows that the property alleged to have been stolen was under the care, custody and control of Mrs. Esther Maye Jones, and that she and her husband looked after such property. That her husband was subject to an affliction which at times rendered him unconscious, and that this property, while belonging to the Magnolia Petroleum Co., was in her care, custody and control. We think it is perfectly plain that she was the special owner, and that her name and initials were E. M. Jones. We see no failure in correspondence of the allegation and proof. See Branch's P. C., p. 1316, sec. 2432.

Appellant again complains because it is claimed that the State failed to make out a case of receiving a sufficient amount of stolen property to show a felony. It is shown by the proof that the negro Busby took the officers to places where they recovered nine cases of oil and two buckets of grease, but only six of these cases bore any identifying marks thereon from which the witnesses were able to say that these cases came out of this Magnolia warehouse at the time of the burglary. It was shown that at the time that these six cases of oil were stolen there were also other cases of oil stolen, the whole being valued at more than $50.00, and that all such stolen stuff was delivered to appellant near midnight of July 17, 1940. We think that such facts were sufficient for the jury to say that the amount received by appellant was either the whole of the stolen property or none of it. They may infer the stealing of the whole from the possession of a part. Branch's P. C., p. 1332, Sec. 2463, and cases cited. It is also worthy of note that the accomplices state that they delivered to appellant seventeen cases of oil, which would amount in value to more than $50.00.

Appellant complains relative to the court's charge on ac-

complice testimony. We think the court should have responded to this complaint. We suggest, in the event of another trial, that the court give in charge to the jury substantially the charge set forth in Brown v. State, 57 Texas Cr. R. 570, 124 S. W. 101, which is quoted in Quinn v. State, 123 S. W. (2d) 890.

It is here noted that in order to connect this appellant under this indictment it is necessary to show guilty knowledge. True, this endeavor comes from accomplices, but that one fact does not render this proof inadmissible. Mr. Wharton lays down the exceptions to the general rule that forbids the introduction of crimes of a like character, and among these exceptions we find (3) to prove scienter or guilty knowledge. In Section 35, Vol. 1, on Criminal Evidence, he says:

"Evidence of collateral offenses often becomes relevant where it is necessary to prove scienter or guilty knowledge, even though the reception of such evidence might establish a different and independent offense. In prosecutions for receiving stolen property, guilty knowledge is the gist or substance of the offense to be established by the prosecution, and evidence of collateral offenses is admissible to establish such knowledge."

We think the Kaufman case, 70 Texas Cr. R. 438, 159 S. W. 58, from which the above quotation is taken, is in point on this proposition. We also think the Henderson case, 76 Texas Cr. R. 66, 172 S. W. 793, in point. In that case the State's witness claimed that appellant told witness that he needed some pool balls, and if witness would get some pool balls the accused would buy them from him. Witness stole one No. 7 pool ball about one o'clock and brought same to accused's room, who took same and asked witness to get some more. Then later witness and a friend stole four more balls and took same up to Henderson's room, where Henderson's wife took the balls and laid them down on the floor; the thieves then met Henderson on the street and told him about the four other balls, and he gave them fifty cents. This prosecution was for receiving the first ball No. 7. This court held that the second transaction of the additional four balls was admissible under Branch's Crim. Law, Sec. 338, and cases there cited. To the same effect is the case of Lytton v. State, 101 S. W. (2d) 564, the only difference between the Lytton case and the one at bar being that the State introduced a confession of Lytton; yet the court held in that case that the plea of not guilty placed the burden upon the State to prove not only the reception of the stolen property but also the guilty knowledge upon Lytton's part at such time. That the

conspiracy between the parties and the other transactions therein complained of would be of value in establishing such knowledge.

We think that offenses of a like character as the receiving of the Groesbeck property were admissible. We doubt the admissibility of the Abe Schwartz stolen shirts. There seems to have been no conspiracy relative to such goods as the fruits of the Schwartz burglary.

We can see no harmful error in allowing J. T. Jones to testify relative to an affliction that he might have had and his liability to fall unconscious at any time.

Appellant's bill of exceptions No. 9 complains of the remarks of the State's attorney as follows:

"Now then gentlemen of the jury, let us consider the characters in this crime. I am sure that the characters in this case are the most unusual of any that have been brought into the court room in many a day."

Appellant seems to think that such remarks refer to his character, which he says was not put in issue. We think that the criticism is not well founded. Such remarks might have been directed at anyone of the numerous witnesses who appeared in the case, among whom the appellant was not. We see no error shown herein.

There seems also to have been an unfortunate personal encounter between one of the State's witnesses and appellant's counsel, and his bill of exceptions No. 11 is concerned with the State being allowed to prove by the witness engaged in such encounter his version thereof. This matter was offered and brought out by appellant's attorneys presumptively for the purpose of showing bias and ill-will upon the part of such witness toward them and their client, the appellant. We think after such had been offered by the appellant, the State had the right to show the absence of such bias upon the part of the witness, which they endeavored to do by means of the objected to testimony. In the event of another trial hereof we suggest that the trial court embody in his charge a paragraph relative to these offenses other than that relative to the Groesbeck oil, and therein limit the same only for the purpose of showing guilty knowledge, if they do thus show.

We note that the court instructed the jury that Busby was an accomplice as a matter of law. It is our opinion that in

this respect the court committed an error against the State. It occurs to us that under the testimony it was an issue of fact whether Busby was an accomplice, and that issue should have been submitted to the jury. Busby testified that appellant came to his home on the night in question and asked him, Busby, to go with him and assist him in concealing some oil; that when Busby demurred, claiming that he was ill, appellant threatened to kill him unless he did as requested. Busby's wife and mother-in-law testified substantially to the same facts. If Busby was put in fear of death or serious bodily injury, and, while laboring under such fear, he assisted the appellant in concealing the oil, he would not be an accomplice witness and his testimony would not be required by law to be corroborated. The fact that he may have kept silent after the concealment of the oil would not make him an accomplice. It seems to be a general rule that a person who is forced by threats or actual violence to do an act is not liable to punishment for the same. See Turner v. State, 16 S. W. (2d) 127; Turner v. State, 37 S. W. (2d) 747; Wingo v. State, 210 S. W. 547, and Williams v. State, 33 Texas Cr. R. 128.

We therefore think that the court should have submitted to the jury the question as to whether or not the witness Busby was an accomplice, such fact to be determined by them under proper instructions.

We are of the opinion that the State failed to sufficiently corroborate the three accomplices in this matter. One accomplice can not corroborate another. The only corroboration we have is furnished by the negro Ollie Busby, who was denominated an accomplice by the court and who took the officers to the place where some of this stolen oil was found. No one save Busby ever places appellant at the hiding place. It is not clearly shown whether or not appellant had control of the land where the oil was hidden, nor how far from appellant's home a portion of this oil was found. It is true that Busby's wife says that she heard appellant tell her husband that he wanted the husband to go with appellant "and help him put away some stuff." This statement is practically all the corroborating testimony to anyone of the three charged accomplices. Such testimony does not mention what kind of "stuff" was referred to by appellant, and leaves the jury as well as this court in doubt as to its meaning. We are of the opinion that the testimony in corroboration of this negro, who is charged to be an accomplice, is too weak and uncertain to tend to connect this appellant with the commission of the offense charged in the indictment, and

on account of such failure it is our duty to reverse this judgment.

We have examined all bills, and those not written upon are overruled.

The judgment is reversed and the cause remanded.