THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ MERCEDES TIRADO ET AL., Defendants and Appellants.

No. 13338.   Argued November 12, 1948.—Decided November 26, 1948.

362

F. *Hernández Vargas* for appellants.   *Luis Negrón Fernández,*
*Attorney General,* and *J. Rivera Barreras, Prosecuting At-*
*torney,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

José Mercedes Tirado and Bernardo Rodríguez were ac-
cused of murder in the first degree.   They were tried before

a jury, convicted of murder in the second degree and sentenced to ten to fifteen years in the penitentiary.

On appeal the defendants contend that the lower court erred in not instructing the jury as a matter of law that Francisco Galíndez, a witness, was an accomplice, and therefore that conviction could not be had without corroboration of his testimony pursuant to § 253, Code of Criminal Procedure, 1935 ed.

██ Galíndez testified that he participated in certain phases of the alleged crime with the two defendants, but that he did so because the latter threatened to kill him if he did not help them. The trial court instructed the jury that if they believed Galíndez acted under coercion, he was not an accomplice and his testimony need not be corroborated; but that if they did not believe he acted under coercion, he was an accomplice and corroboration of his testimony was required before conviction could be had. As there was some evidence of coercion, this woud have been a proper instruction in any case except murder in the first degree. *Robinson v. State*, 148 S.W. 2d 1115 (Tex., 1941). However, the instruction was erroneous because the defense of coercion is not available to a person who participates in acts which result in a charge of murder in the first degree.

Section 39 (10) of the Penal Code, 1937 ed., provides as follows:

"All persons are capable of committing crimes except those belonging to the following classes:

"*       *       *       *       *       *       *

"Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to, and did believe their lives would be endangered if they refused."

The *Fiscal* of this Court argues that the exception clause of par. 10 is academic as insular law no longer makes any crime punishable by death. But this clause must be read in the light of our statutory law when it was enacted in 1902.

At that time murder in the first degree was with one unusual exception the only insular crime punisable by death. Section 202, Penal Code.[1] And in California and throughout the United States generally, both at common law and by statutes, coercion is a defense except in murder cases. *People* v. *Petro*, 56 P. 2d 984 (Calif., 1936); Miller on Criminal Law, § 54, p. 165–66; Hall, Principles of Criminal Law, pp. 408–415.

When par. 10 was enacted, the Legislature was following the policy laid down in these cases and statutes. In view of subsequent events, it would have avoided any future difficulties if the Legislature had in par. 10 expressly excepted murder in the first degree. But as our Penal Code at that time provided in substance for only one crime punishable by death—murder in the first degree—the phrase it did use was equivalent to murder in the first degree. We do not believe that in eliminating the death penalty for murder in the first degree by Act No. 42, Laws of Puerto Rico, 1929, the Legislature intended to make the exception clause of par. 10 academic. In effect, par. 10 provided when originally enacted that coercion is not a defense to a first degree murder charge. The Legislature has never amended par. 10. It therefore still means that coercion is not a defense to such a charge.

■ The *Fiscal* of this Court also argues that in any event par. 10 is not involved here as Galíndez is not a defendant. But the test is not whether such a witness actually is a defendant, but rather whether he could be charged with the crime. Since Galíndez under par. 10 could not plead coercion if he had been indicted with the two defendants for murder in the first degree, his testimony must be corroborated under § 253, whether or not he was indicted. *Robinson* v. *State, supra.*

■ The district court erred in not instructing the jury

---

[1] See § 219, Penal Code, Revised Statutes and Codes of 1911, making train robbery and derailment punishable by death.

that as a matter of law Galíndez was an accomplice, and that his testimony must be corroborated before conviction could be had.

The defendants also argue that the lower court erred in refusing their motion to direct a verdict of acquittal on the ground that the record contains no evidence corroborating the testimony of Galíndez. This contention makes it necessary for us to examine some of the testimony.

Galíndez testified that he and the deceased, a soldier named Ricardo N. Báez, went to Tirado's house where a dance was going on; that they stayed there for two hours; that Báez then asked Tirado for permission to dance; that Tirado refused him the permission and he and Rodríguez threw Báez on the ground; that Tirado choked the soldier by pulling his necktie while Rodríguez held him; that the soldier kicked for five minutes and then became still, at which time the defendants put him under a mango tree. The witness helped the defendants to carry him there because if he had refused, the defendants would have killed him. The two defendants went to look for a rowboat on the shore of the lagoon, while the witness remained with the soldier under the mango tree; when the defendants returned, they made the witness help them carry Báez to the shore of the lagoon to a yawl with two lighted torches; they threw Báez into the yawl; the two defendants, but not the witness, got into the yawl which had two oars in addition to the two torches; the defendants rowed in the direction of Camp Tortuguero; Rodríguez said, "Let's throw him out farther above so that he will finish drowning"; Tirado agreed to that; the witness saw them row toward the camp; they rowed 300 yards, stopped the boat and threw the soldier into Tortuguero Lagoon.

Juana Rosario Andio, a cousin of Tirado, testified that there was a dance at Tirado's house, with Galíndez, Báez, Juan Rosario Sánchez, the two defendants and a number of other people present; that Báez was on the balcony and Tirado grabbed him by the necktie and began to choke him

with the necktie; that the two defendants dragged the soldier to the patio; that the latter fought for awhile and then became motionless; that the two defendants and another person carried Báez to a mango tree and placed him under it; that she met Rodríguez the next day and he told her to say nothing about what had happened the night before or she would be prejudiced.

On cross-examination she testified that she had originally been arrested because of the facts herein and was in jail for a day; that she testified before the municipal court in the same manner as she was now testifying at the trial because she wanted to get out of jail; that some of her statements before the municipal judge were true and others were not. She then began to change her story, asserting first that she saw the episode from afar, but did not pay attention. Finally, she stated that she saw nothing as she was not present at the dance. The district attorney, in order to impeach her credibility on cross-examination, introduced in evidence a sworn statement made by her before the municipal judge which was substantially to the same effect as her testimony on direct examination.

Juan Rosario Sánchez testified that he did not see the defendants and had not been at Tirado's house on the night in question. In order to impeach his credibility, the district attorney introduced in evidence without objection by the defendants a prior sworn statement made by Rosario before the municipal judge which was along the same lines as the testimony of Galíndez and Juana Rosario Andino.

It is somewhat unusual for a witness to change her testimoney while on the stand. But if that does occur, as in the case of Juana Rosario Andino, the party offering her testimony on the direct examination is entitled after laying the proper foundations to impeach her credibility with reference to the story she told on cross-examination by introducing her prior written statement inconsistent with the cross-examination testimony. See *People* v. *Méndez*, 54 P.R.R. 22; *People*

v. *Lafontaine,* 43 P.R.R. 21; *People* v. *Pérez,* 43 P.R.R. 566; *People* v. *Cruz,* 62 P.R.R. 801; *People* v. *Lebrón,* 61 P.R.R. 634; *People* v. *Rodríguez,* 36 P.R.R. 388; *Hall* v. *Incorporated Town of Manson,* 68 N.W. 922 (Iowa, 1896); *People* v. *Reese,* 150 P. 2d 571, 581 (Calif., 1944); *Herren* v. *State,* 276 S.W. 365 (Ark., 1925); Ann. Cas. 1914 B 1120; Annotations, 74 A.L.R. 1042; 90 A.L.R. 74; 54 A.L.R. 1374; 117 A.L.R. 326; Ladd, Impeachment of One's Own Witness— New Developments, 4 U. of Chi.L.Rev. 69. Cf. Annotation, 140 A.L.R. 21. By this partial impeachment the district attorney was not attacking her entire testimony. His contention, which he was entitled to make, was that the witness told the truth on direct examination but lied on cross-examination. It was then for the jury to determine whether it believed the testimony on direct or on cross-examination. Consequently, despite some intimations to the contrary by the lower court, there is some evidence in the record—the testimony of Juana Rosario on direct examination—which, if believed by the jury, was sufficient to corroborate the testimony of Galíndez. The district court therefore did not err in overruling the motion for a directed verdict of acquittal.

However, despite the fact that the record contains the corroborating evidence of Juana Rosario Andino in her direct examintaion, we are unable to determine if it was believed by the jury. In view of the contradictory stories told by Juana Rosario while on the stand, the jury may have based its verdict on the testimony of Galíndez alone, under the instruction of the district court that it could do so if it found that Galíndez acted under coercion. But, as we have seen, Galíndez was an accomplice as a matter of law, and therefore the verdict which may have been based on his testimony alone cannot be permitted to stand.

The defendants also assign as error the fact that while the jury was deliberating, the marshal advised the district judge, who was in his chambers, that the jury wanted

to know if it could return a verdict of manslaughter. The judge told the marshal to inform the jury that the only instructions he had given it were on murder in the first and second degrees and acquittal.

This was an improper communication made by the court to the jury outside the presence of the defendants and their counsel. This communication was not on the subject of the comfort of the jury. *People* v. *Vázquez*, 68 P.R.R. 62; *People* v. *González*, 66 P.R.R. 851. Rather it was a communication "with the jury regarding the case". *People* v. *Saldaña*, 66 P.R.R. 181, 183. The error of the court "is fatal, although the contents of the communication are not improper . . . the error is presumed to be prejudicial unless it is affirmatively shown that there has been no prejudice." *Id.*, 183. We think there has been no such affirmative showing here. Aside from the fact that we have no way of knowing in what manner the marshal delivered the message of the judge, we are not entitled to speculate as to what might have occurred if this episode had taken place in open court in the presence of the defendants and their counsel.

There is a simple way for the district courts to make certain that they are not violating this rule: adoption of an inflexible practice not to communicate with the jury, no matter how trivial the subject, except in open court and in the presence of the defendant and his counsel, or after having given them an ample opportunity to be present.

The judgment of the district court will be reversed and the case remanded for a new trial.