RICHARD MEDLEY V. STATE

No. 31,676. June 15, 1960

State's Motion for Rehearing Overruled October 12, 1960

*Mullinax, Wells, Morris & Mauzy, Dallas,* and *King C. Haynie* (of Counsel on Appeal Only) Houston, for appellant.

*Henry Wade,* Criminal District Attorney, *Robert E. Lyle, Jerome V. Chamberlain, Jr., Phil Burleson,* Assistants District Attorney, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for the possession of a bomb under Art. 1723, V.A.P.C.; the punishment, 25 years and a fine of $10,000.

This is a companion case to that of McClane v. State, No. 31,966. This day decided. (Page — this volume), 343 S.W. 2d 447.

General Jackson Hill testified that after attending church Sunday evening, July 12, 1959, he, his wife, daughter and niece returned to his home at 2620 Engle Street in Dallas about 8:30 P.M., and parked his Oldsmobile in which they were riding on a concrete driveway about one foot behind his Pontiac which was under a car-port attached to the house. The front of the Oldsmobile was about two feet from the side of the house. The family retired about 10:00 or 10:30 P.M. He further testified that he was awakened at 2:45 A.M., July 13, by the noise of an explosion followed by the squealing of tires of an automobile

running at a high rate of speed down the street; that the front yard was well lighted because of a fire with a 25 foot radius which was burning on the driveway and grass and under and around his Oldsmobile and that the right rear tire was on fire. He smelled gasoline in the yard and there was broken glass all over the driveway and grass which was not there at 8:30 P.M. the previous evening. He identified State's Exhibit No. 1 and stated that it had a rag and cloth attached to it and was laying by the side of the front of the Oldsmobile in the driveway. He further testified that he looked at his watch immediately after he heard the explosion "because I had already been visited a couple of times before that." He also testified that he was then and had been employed for over seven years by an industrial plant, and was an inspector; that he and the appellant had been members of the same union and he had met him through the strike at the plant where the appellant had been employed but was not on July 12.

The appellant, who lived in Irving, had two conferences about July 1, 1959, with Bobby Mack Capers and Clyde Chapman Binkley according to their testimony in and near Ft. Worth. During these conferences they testified appellant asked Capers and Binkley "to do some things for him." They further testified that the three next met in Dallas several days later and went to Tony Hubaceck's house, and the four then went to James Everett McClane's house, and at appellant's suggestion they agreed to meet later at appellant's residence which they did.

Appellant and McClane were members of a union which was on strike at a certain industrial plant hereinafter called the company, and they had also been employees of the company. They had participated in the strike then going on at the company with McClane walking the picket line and the appellant having been a union steward. Capers and Binkley had never been employees of the company.

Bobby Mack Capers testified that the appellant told them that he wanted them to destroy the property of the men crossing the picket lines and working at the company; and for which he would pay them well and if necessary he would furnish legal assistance and bonds. He testified further that at his home, the appellant told them of the important persons he felt should be scared into leaving their work and quit crossing the picket lines and that he wrote in their presence a list of names of employees of the company who had crossed the picket line and

gone back to work. In addition to the names were their addresses, license numbers, colors and numbers of cars owned; and they stated that appellant told them that the first person on the list who needed to be taken care of was G. J. Hill. The record shows that G. J. Hill and General Jackson Hill were the same person.

Capers further testified that the appellant told them that the best way he knew of doing the job was to use a gasoline bomb, and then gave them some bottles, lids and rags, and explained how the jars should be prepared and then thrown against Hill's car; that they prepared a jar as directed and about 2 a.m., July 13, he, Binkley and McClane stopped their car in front of Hill's driveway and McClane threw the gasoline bomb which struck the concrete driveway beneath the rear of Hill's car ignited and burned the right rear tire and damaged other parts of the car.

Clyde Chapman Binkley testified for the state and his testimony corroborates and supports that of the witness Capers. It adds no new pertinent facts to Caper's testimony except that he informed the officers while in jail that the list of names and appellant's telephone number which appellant wrote in his presence could be found on some paper and in a small book which was in his wallet in the sheriff's office or that his mother had them.

Following the witnesses Hill, Capers and Binkley, the state called only five other witnesses. One was an investigator for the Dallas Fire Department. He went to Hill's residence immediately after the explosion in the driveway and his testimony shows what he found at the scene and also the combustibility of gasoline in containers provided with wicks when ignited and then broken by being thrown. The next two witnesses identified known specimens of appellant's handwriting, and then one of them and a handwriting expert testified that a comparison of the known specimens with the list of names and the telephone number which Capers and Binkley testified appellant wrote were written by the same person. The state's last witness testified that the appellant's general reputation for being peaceful and law abiding was bad as did two other state witnesses who had previously testified.

Appellant did not testify but called five reputation witnesses and who also gave testimony in support of his application for a suspended sentence.

Appellant challenges the sufficiency of the evidence to corroborate the testimony of the accomplice witnesses Capers and Binkley.

The trial court recognized Capers and Binkley as being accomplice witnesses and in its charge so instructed the jury.

The state relies upon the testimony of Capers and Binkley for a conviction.

A conviction cannot be sustained upon the testimony of one or more accomplices unless corroborated by other evidence tending to connect the accused with the offense charged; and the corroboration is not sufficient if it merely shows the commission of the offense. Art. 718 C.C.P.

The rule as to the corroboration of accomplice testimony has been stated as follows in Masten v. State, 20 S.W. 2d 780:

"The accomplice must be corroborated by the evidence of some other witness, and this corroboration must be by proof of some fact tending to connect the defendant with the commission of the offense. The accomplice may state any number of facts, and these facts may all be corroborated by the evidence of other witnesses: still, if the facts thus corroborated do not tend to connect the defendant with the crime, or if they do not point pertinently to the defendant as the guilty party or as a participant, this would not be such corroboration as is required by the code. We suggest this mode as a proper test: Eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no inculpatory evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him."

2 Branch (2d), 45, Sec. 748, reads as follows: "The corroboration of the accomplice testimony must be effected by evidence other than that of the accomplice witness; the facts to be corroborated must tend to connect such defendant directly and immediately with the commission of the offense charged. (Cases Cited)

If the evidence corroborating the accomplice testimony is inconclusive and insufficient, the judgment of conviction will be set aside." (Cases Cited)

See also: 18 Tex. Jur. 263, Sec. 160; Barnes v. State, 158 Tex. Cr. Rep. 93, 253 S.W. 2d 440; Thomas v. State, 166 Tex. Cr. Rep. 331, 313 S.W. 2d 311.

A careful search of the record reveals no evidence, excluding the testimony of Capers and Binkley, that in any way tends to connect the appellant with the offense charged unless it is found in the list of names and addresses and telephone number as shown in the above summary of the facts.

The testimony of the handwriting expert and also another witness that the list of names and the telephone number were in appellant's handwriting could corroborate the two accomplices' testimony that he wrote them, *but here the corroboration ends.* Because the bare undated and isolated list of names and addresses and the telephone number without any supplementation, do not in themselves point to or connect or tend to connect the appellant in any manner with causing the accomplice witnesses to possess and control a bomb. Therefore they do not furnish any corroboration of the testimony of the accomplices Capers commission of the offense charged. Jones v. State, 4 Texas and Binkley showing the participation of the appellant in the Court of Appeals 436 and 7 Texas Court of Appeals 457.

The evidence is not sufficient to corroborate the testimony of the accomplice witnesses. This being true, the mandatory provisions of Art. 718, C.C.P., prohibits this court from permitting the conviction to stand.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.