Tony PARKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 41837.

Court of Criminal Appeals of Texas.

Feb. 19, 1969.

Thomas E. Lucas, John B. Bible, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Erwin G. Ernst, Atty. Dist. Atty., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

The offense is murder with malice; the punishment, assessed by the jury, life.

The undisputed evidence shows that one Isaac Walter August was shot and killed during an attempted armed robbery of the Denver Harbor Liquor Store on Lyons Avenue in the City of Houston on November 12, 1966, at approximately 7:30 p. m. The autopsy established that he had been shot three times by a .22 caliber gun.

Pearl Toon testified that said date was her first day at work at the Denver Harbor Liquor Store. At approximately 7:30 p. m. she heard her employer, Isaac August, say: "No, no, don't do that, there is not much in there." She looked towards her employer at the cash register and saw the appellant Parks with a gun. At such time she began to back out of the store but the defendant told her to come back. She did so with her hands up. Shortly thereafter August and the appellant began to struggle or wrestle over the door to a storeroom. At that time Mrs. Toon kicked off her shoes and ran out of the store to a nearby service station. After getting to the service station she looked back and saw the defendant right behind her. She never saw her employer alive again but did see him when he was carried from the store on a stretcher a few minutes later at which time he appeared to be dead.

Pearlie Beatrice Washington testified that between 7:30 and 8 p. m. on the date in question she and a friend, Joyce Marie Perry, were driving slowly past Mr. August's liquor store looking for a place to park their automobile. She related that as they came even with the store she saw an elderly lady kick off her shoes and run out of the store and across the street to a service station; that a few seconds later a man of slight build wearing a yellow shirt came out of the store and ran in the same direction as

the woman but at the corner turned right, away from the service station; that she left the automobile and went to the steps of the liquor store and stayed there until police officers arrived; that no one entered or came out of the store in the ensuing interval of approximately five minutes. She was unable to identify appellant as the man she had seen leaving the liquor store earlier.

Joyce Marie Perry, the driver of the automobile, substantially corroborated the testimony of Pearlie Washington. In addition, she testified that the man who ran out of the liquor store had a gun in his hand which she described as a pistol. She testified that he paused, looked in both directions and then ran in the same direction as the elderly lady. At the trial she identified the appellant as the man she had seen leaving the liquor store with the gun. She related that her identification of the appellant was based on the fact that she had seen him on several occasions prior to the robbery in company of a man she knew; that she had seen the appellant enough to recognize him but that she did not know his name. The witness Perry explained that it did not immediately occur to her on the night of the robbery that she knew the appellant, but when she saw him again two or three days later in the company of other individuals with whom she was acquainted it occurred to her that the appellant was the same man she had seen on the night of the robbery in question wearing a light colored shirt, either yellow or blue.

Graham L. Clayton, a Houston *Chronicle* distributor, testified that on the night of the robbery he was in a service station near the liquor store in question and saw a woman running toward the station and a man running behind her. He observed the man turn and run in an opposite direction at the intersection. He described the man as being of the appellant's build and wearing a gold knit sweater, but he was unable to positively identify the appellant as the man he had seen.

The appellant did not testify but he called Officer H. H. Foster of the Houston Police Department, Identification Division. Officer Foster testified that on November 12, 1966, he examined the scene of the shooting for latent fingerprints and of those he was able to obtain none matched the fingerprints of the appellant.

█ Initially, appellant complains that the trial court erred when the State, after the receipt of the above testimony, was allowed to call two additional witnesses [1] to show the armed robbery of another liquor store by the appellant while wearing a yellow or gold shirt later on the night in question on Lyons Avenue in the City of Houston some 43 blocks from the Denver Harbor Liquor Store. Such evidence reflects that at the time appellant fired at or over the head of the liquor store operator. Appellant relies upon the fundamental rule of law that one accused of a crime is to be tried for the offense charged and none other, and evidence that he is a criminal generally is inadmissible. This is a well recognized rule and this Court does not hesitate to apply it. Hafti v. State, Tex.Cr.App., 416 S.W.2d 824.

It is observed that there are well recognized exceptions to the general rule when the extraneous transaction or crime is a part of the res gestae, or tends to show intent or identity when either or both are in issue, or tends to connect the defendant with the offense for which he is on trial. See 1 Branch's Anno.P.C., 2d ed., § 188, p. 200. See also 4 Branch's Anno.P.C., 2d ed., § 2255, p. 616.

█ It is observed that the issue of identity so as to authorize the admission of an extraneous offense or transaction may be raised by cross-examination. Ferrell v. State, Tex.Cr.App., 429 S.W.2d 901. In addition to offering testimony that the fingerprints of the appellant were not found at the scene of the crime, appellant's coun-

1. One of such witnesses was "Top Cat" Smith, who the court later charged was an accomplice witness as a matter of law.

sel vigorously cross examined the only two witnesses who were able to place the appellant at the scene of the crime. In each instance it is observed that he obtained from the State a previous statement of the witness and sought to impeach her testimony as to identification. From the witness Perry he was able to elicit the fact that shortly after the shooting she gave a sworn statement to the police that she did not recognize the man seen leaving the store and would be unable to identify him since she did not see his facial features clearly; that when she did determine she had recognized the appellant she did not report it to the police. In fact, the availability of her testimony as to identification was not known to the State until shortly before the actual trial.

■ In view of these circumstances, we cannot agree that the court erred in admitting evidence of an extraneous offense. Ground of error #1 is overruled. Campbell v. State, 163 Tex.Cr.R. 545, 294 S.W. 2d 125; Olivio v. State, Tex.Cr.App., 422 S.W.2d 182; Genzel v. State, Tex.Cr.App., 415 S.W.2d 919; Ferrell v. State, supra; 4 Branch's Anno.P.C., 2d ed., § 2255, p. 616.

■ In his second ground of error appellant complains the court erred in permitting the State to re-open its case twice in violation of Article 36.01, Vernon's Ann. C.C.P., and both the state and federal Constitutions. This claim is based upon the fact that after both sides had rested their cases in chief, the State was allowed to offer two witnesses as to the extraneous offense discussed above.

If the evidence offered was not rebuttal testimony which is permissible under Article 36.01, § 7, V.A.C.C.P., certainly no error was presented in view of the provisions of Article 36.02, V.A.C.C.P., which provides, "The court shall allow testimony to be introduced at any time before the argument of a clause is concluded, if it appears that it is necessary to a due administration of justice."

Ground of error #2 is overruled. McCullough v. State, Tex.Cr.App., 425 S.W.2d 359; Riley v. State, Tex.Cr.App., 399 S.W. 2d 805: Texas Digest. Criminal.Law, ☞ 686.

In his third and fourth grounds of error appellant complains the trial court failed to correctly charge the jury on accomplice testimony and extraneous offenses and erred in refusing to give his special requested charges on such subjects.

■ We observe that the instruction on accomplice testimony is in the language approved in Brown v. State, 57 Tex.Cr.R. 570, 124 S.W. 101, and the instruction on extraneous offenses follows the language recommended in Willson's Texas Criminal Forms, Sec. 3601. Further, it is well established that special requested charges may be properly refused where the instructions given by the court are adequate and fully protect the rights of the accused. Texas Digest, Criminal Law, ☞829(1); Kelly v. State, 135 Tex.Cr.R. 509, 120 S.W. 2d 1067; Texas Digest, Criminal Law, ☞ 829(10); Watts v. State, 151 Tex.Cr.R. 349, 207 S.W.2d 94 (reversed on other grounds).

■ Grounds of error #3 and #4 are overruled.

■ Lastly, appellant contends the trial court erred in the systematic exclusion of certain jurors because "they did not believe in the death penalty." He relies upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

First, it is observed that the record does not contain the voir dire examination of the jury panel nor reflect a showing of a request for the court reporter to take such voir dire. Article 40.09, Sec. 4, V.A.C.C.P. Without a record of the voir dire examination this Court is unable to consider this contention. See Evans v. State, Tex.Cr. App., 430 S.W.2d 502.

■ Secondly, we note that in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct.

1788, 20 L.Ed.2d 797, the Supreme Court said:

> "Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment."

Such holding would be applicable here.

Nevertheless, appellant argues that under the jury selection methods utilized and our bifurcated trial procedure (Art. 37.07, V.A.C.C.P.), a prosecution prone jury was chosen to decide the question of guilt alone.

In Bumper, the Court said:

> "The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491; Turner v. State of Louisiana, 379 U.S. 466, 471–473, 85 S.Ct. 546, 548–550, 13 L.Ed.2d 424 [428, 429]; Irvin v. Dowd, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642, 6 L.Ed. 2d 751 [755, 756]. We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in Witherspoon. Accordingly, we decline to reverse the judgment of conviction upon this basis."

In Witherspoon, the Court had said:

> "The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital pun-

ishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was."

Ground of error #5 is overruled.

The judgment is affirmed.

DOUGLAS, J., not participating.