PD-0809-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/31/2015 9:48:19 AM
Accepted 9/1/2015 11:39:44 AM
ABEL ACOSTA
CLERK

PD-0809-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

FREDRICK CARSON
*APPELLANT*

vs.

THE STATE OF TEXAS
*APPELLEE*

FROM THE FIFTH COURT OF APPEALS
CAUSE No. 05-14-00376-CR

APPEAL FROM THE 203RD DISTRICT COURT OF
DALLAS COUNTY, TEXAS, CAUSE NO. F13-54167-P

APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

September 1, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether it can be inferred that a person is an accomplice to capital murder if he accompanies the primary actor and voices no objection, fails to remove himself from the situation, and fails to report the crime after its commission.

# Table of Contents

Ground for Review ...................................................................................2

    Whether it can be inferred that a person is an accomplice to capital murder if he accompanies the primary actor and voices no objection, fails to remove himself from the situation, and fails to report the crime after its commission. ................................................................2

Table of Contents ....................................................................................3

Index of Authorities ................................................................................4

Identity of Parties and Counsel ..............................................................5

Statement Regarding Oral Argument .....................................................6

Statement of the Case and Procedural History.......................................7

Ground for Review ...................................................................................9

Prayer .....................................................................................................15

Certificate of Service...............................................................................17

Certificate of Compliance .......................................................................17

# Index of Authorities

**Cases**

*Bacey v. State*, 990 S.W.2d 319 (Tex. App.—Texarkana 1999)...............15
*Blake v. State*, 971 S.W.2d 451 (Tex. Crim. App. 1998)....................10, 11
*Carson v. State*, No. 05-14-00376-CR, 2015 WL 3549779 (Tex. App.—
  Dallas 2015) ........................................................................12, 13, 16
*Cocke v. State*, 201 S.W.3d 744 (Tex. Crim. App. 2006)...........................13
*DeBlanc v. State*, 799 S.W.2d 701 (Tex. Crim. App. 1990) .....................10
*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007)..................11, 12
*Ex parte Zepeda*, 819 S.W.2d 874 (Tex. Crim. App. 1991) ......................11
*Gonzales v. State*, 441 S.W.2d 539 (Tex. Crim. App. 1969) ....................11
*Harris v. State*, 645 S.W.2d 447 (Tex. Crim. App. 1983) ........................15
*Morgan v. State*, 346 S.W.2d 116 (Tex. Crim. App. 1961) ......................12
No. 05-14-00376-CR, 2015 WL 3549779 (Tex. App.—Dallas 2015) ........8
*Russell v. State*, 598 S.W.2d 238 (Tex. Crim. App. 1980) .................13, 14
*Singletary v. State*, 509 S.W.2d 572 (Tex. Crim. App. 1974) ..................11
*Smith v. State*, 332 S.W.3d 425 (Tex. Crim. App. 2011) ...................10, 11
*Suff v. State*, 531 S.W.2d 814 (Tex. Crim. App. 1976) ............................15
*Turner v. State*, No. 05–03–01717–CR, 2005 WL 1524586 (Tex. App.—
  Dallas 2005, pet. ref'd) .......................................................................13
*Urtado v. State*, 605 S.W.2d 907 (Tex. Crim. App. 1980) .......................15

**Statutes**

TEX. PEN. CODE § 12.31 ...........................................................................8
TEX. CODE CRIM. PROC. art. 38.14...........................................................10

**Other Authorities**

43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal
  Practice and Procedure* § 51.76 (3d ed. 2011) ......................................15

## Identity of Parties and Counsel

For Appellant Fredrick Carson:

>DOUGLAS PARKS
>>*Trial counsel of record*
>
>321 Calm Water Lane
>Holly Lake Ranch, Texas 75765
>
>BRUCE ANTON
>BRETT ORDIWAY
>>*Appellate counsel of record*
>
>SORRELS, UDASHEN & ANTON
>2311 Cedar Springs, Suite 250
>Dallas, Texas 75201

For Appellee the State of Texas:

>HERSCHEL V. WOODS
>JEREMIAH "JERRY" VARNEY
>>*Trial counsel of record*
>
>DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
>133 N. Riverfront Blvd.
>Dallas, Texas 75207
>
>G. BRIAN GARRISON
>>*Appellate counsel of record*
>
>DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

>203RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS
>THE HONORABLE TERESA HAWTHORNE PRESIDING

## Statement Regarding Oral Argument

Oral argument is waived.

## Statement of the Case and Procedural History

On March 21, 2013, the complainant, Scott, was shot during a robbery outside his home. (RR3: 30-31). He died of his injuries shortly thereafter. (RR4: 45).

Carson was arrested and charged with capital murder for intentionally killing Scott in the course of robbing him. (RR3: 175; CR: 6). He pleaded not guilty, and on March 18, 2014, his trial began with voir dire. (RR2: 5, 39-122). The State called 13 witnesses over the following two days and then rested its case. (RR3-4; RR4: 47). The defense called no witnesses, resting immediately after the State. (RR4: 52). The jury then found Carson guilty, and the trial court imposed a mandatory life sentence. (RR4: 78, 80; CR: 40); *see* TEX. PEN. CODE § 12.31(a)(2). Carson filed notice of appeal that day. (CR: 42).

On appeal to the Fifth Court of Appeals, Carson raised five issues: (1) the evidence was insufficient to support his conviction; (2) the trial court did not instruct the jury on the accomplice-witness rule; (3) the trial court did not properly limit the jury charge's definitions of "intentionally" and "knowingly" to the offense's relevant conduct elements; (4) the trial

7

court lacked jurisdiction; and (5) his automatic life sentence without parole violated the Eighth Amendment. No. 05-14-00376-CR, 2015 WL 3549779, *1 (Tex. App.—Dallas 2015). In an opinion released June 8, 2015, the court overruled each issue and affirmed Carson's conviction. *Id.* No motion for rehearing was filed.

## Ground for Review

> It can be inferred that a person is an accomplice to capital murder if he accompanies the primary actor and voices no objection, fails to remove himself from the situation, and fails to report the crime after its commission.

## I

The Legislature has determined that the factfinder should exercise caution when considering the testimony of an accomplice because "accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). As a result, under Texas Code of Criminal Procedure Article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense. *Id.* To that end, if "there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law [then] 'the court is under a duty to so instruct the jury.'" *DeBlanc v. State*, 799 S.W.2d 701, 708 (Tex. Crim. App. 1990); *see also Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) ("When the evidence clearly shows that a witness is an accomplice as a matter of law, the trial judge must instruct the jury accordingly.").

9

If it is not clear, the jury must initially determine whether the witness is an accomplice as a matter of fact. *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). If the evidence is conflicting, it is proper to leave the question of whether an inculpatory witness is an accomplice witness as a matter of fact to the jury under instructions defining the term accomplice. *Id.* (citing *Gonzales v. State*, 441 S.W.2d 539, 541 (Tex. Crim. App. 1969)).

A person is an accomplice if he or she could be prosecuted for the same offense as the defendant, *or* a lesser included offense. *Blake*, 971 S.W.2d at 454-55 (citing *Ex parte Zepeda*, 819 S.W.2d 874 (Tex. Crim. App. 1991)). In other words, "a person is an accomplice if there is sufficient evidence connecting them to the criminal offense as a blameworthy participant." *Id.* at 455 (citing *Singletary v. State*, 509 S.W.2d 572, 575 (Tex. Crim. App. 1974)). Presence at the crime scene does not make a person an accomplice; an accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed. *Smith*, 332 S.W.3d at 439. A person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it. *Id.* "An accomplice is someone who participates with [a] defendant

10

before, during, or after the commission of the crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "'[T]he test is whether or not there is sufficient evidence in the record to support a charge against' the witness alleged to be an accomplice." *Id.* (quoting *Morgan v. State*, 346 S.W.2d 116, 118 (Tex. Crim. App. 1961). "Whether the person is actually charged and prosecuted for their participation is irrelevant to the determination of accomplice status—what matters is the evidence in the record." *Id.*

## II

In this case, Carson argued on appeal to the Fifth Court of Appeals that the trial court erred in failing to instruct the jury on the accomplice witness rule. *Carson v. State*, No. 05-14-00376-CR, 2015 WL 3549779, *1 (Tex. App.—Dallas 2015). The State conceded error. *Id.* at *4. Witnesses Eric Huckaby and Steven Spriggs were clearly accomplices. *Id.* The only issue was whether the failure was harmful. *Id.*

The court determined it was not harmful by pointing to Miracle Lynch's and Derek Morgan's testimony. *Id.* Though each admitted to accompanying the complainant's killer during the crime, the court con-

11

cluded they were not accomplices, and that their "non-accomplice" testimony implicating Carson thus rendered his conviction certain regardless of any missed instruction. *Id.* In support of its holding, the court noted it found "no record evidence that either Lynch or Morgan committed any 'affirmative act that promote[d] the commission of the offense' with which appellant was charged." *Id.* at *3 (citing *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006) ("A witness is not an accomplice where there is no evidence that the witness was involved in the planning of or assisted in the preparation for the offense. . . . Mere presence at a crime scene does not make an individual an accomplice. . . .") *Turner v. State*, No. 05–03–01717–CR, 2005 WL 1524586, *5 (Tex. App.—Dallas 2005, pet. ref'd) ("A witness is not an accomplice where there is no evidence that the witness was involved in the planning of or assisted in the preparation for the offense."). And, indeed, in *Russell v. State*, 598 S.W.2d 238 (Tex. Crim. App. 1980), this Court held that mere presence at the scene of a capital murder, absent any knowledge of what was about to transpire, did not compel the conclusion that a witness was an accomplice so as to necessitate an instruction that she was an accomplice as a matter of law. In that

case, the appellant took his 17-year-old girlfriend along during an abduction and capital murder. *Id.* She testified that she had no idea what was going on, she remained in the car, she was very scared, she knew it was something bad after she heard gunshots from the woods, and after the shooting appellant took her home. *Id.*

But this is not a case like *Russell*. In contrast to the extremely frightened woman in *Russell*, who remained in the car throughout the encounter and then went straight home, Lynch and Morgan remained willingly with the killers. Lynch testified that she accompanied Carson to Kiest Market, where Huckaby identified that complainant as the robbery target. (RR3: 45-46, 122-23). Lynch specifically testified that she heard the group plan the robbery while in the store, and then still got back into the car with them. (RR3: 47-50). She saw them prepare guns and ski masks, and yet did nothing. (RR3: 50-51). After the complainant's murder, Lynch continued to ride with the men "[t]o some house." (RR3: 53-54). Morgan, too, accompanied the group to Kiest Market and was entirely aware of the plan to rob the complainant. (RR3: 68-74). And yet, he, too, accompanied the men—indeed, he even "play[ed]" with the ski mask. (RR3: 70, 73-75).

13

Where, as here, "the circumstances permit an inference that the witness and the defendant had a common understanding that the offense would be committed by the defendant, otherwise seemingly innocuous behavior by the witness can be sufficient participation to render the witness an accomplice witness." 43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 51.76 (3d ed. 2011). "Evidence permitting such an inference indicates that the witness's behavior was pursuant to an agreement to do more if necessary." *Id.* "Where the circumstances permit such an inference, a trial court should be willing to submit to the jury whether a state witness was actually an accomplice witness even if the witness's conduct—such as going to the place where the offense was committed—was itself insufficient to require submission." *Id.*

Considering all of the evidence of Lynch and Morgan's involvement, primarily in accompanying the killers during the course of the crime, there was a reasonable inference that, "prior to or contemporaneous with the criminal event," they were a party to the agreement to kill and rob the complainant. *See Harris v. State*, 645 S.W.2d 447, 458-59 (Tex. Crim. App. 1983) (citing *Urtado v. State*, 605 S.W.2d 907, 911 (Tex. Crim. App.

1980); *Suff v. State*, 531 S.W.2d 814, 817 (Tex. Crim. App. 1976)); *accord, Bacey v. State*, 990 S.W.2d 319, 329 (Tex. App.—Texarkana 1999) (witness's driving of perpetrators to pick up another perpetrator and bring him back would be sufficient participation in the offense to render the witness as accomplice). That being the case, the court of appeals was wrong to conclude that the trial court's failure to give the jury an accomplice-witness instruction was harmless by pointing to Lynch's and Morgan's "non-accomplice" testimony. *See Carson*, 2015 WL 3549779 at *4. They were very much accomplices.

Accordingly, Carson respectfully requests this Court to grant this petition so that it may reverse the holding of the court of appeals and remand this case to that court to properly evaluate whether the trial court's failure was harmless without considering Lynch's and Morgan's testimony.

## **Prayer**

For the foregoing reasons, Carson respectfully requests this Court to grant this petition for discretionary review.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com


/s/ Brett Ordiway
BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Counsel for Appellant*

16

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and State Prosecuting Attorney on August 31, 2015.


        /s/ Bruce Anton
        Bruce Anton


## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 1,441 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.


        /s/ Bruce Anton
        BRUCE ANTON

**Affirmed and Opinion Filed June 8, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00376-CR

**FREDRICK CARSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1354167-P**

# MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Fredrick Carson appeals his capital murder conviction with five issues[1] arguing that (1) the evidence is insufficient to support his conviction; (2) the trial court did not instruct the jury on the accomplice–witness rule; (3) the trial court did not properly limit the jury charge's definitions of "intentionally" and "knowingly" to the offense's relevant conduct elements; (4) the trial court lacked jurisdiction; and (5) his automatic life sentence without parole violates the Eighth Amendment. We affirm for the reasons discussed below.

---

[1] Although the parties discuss Carson's issues as points of error, we refer to them as issues.

## I. BACKGROUND

The evidence showed that on March 21, 2013 the complainant, Anthony Scott, was shot during a robbery outside his home. He died of his injuries shortly thereafter. Appellant was arrested and charged with capital murder for intentionally killing Scott in the course of robbing him. He pleaded not guilty. A jury found him guilty, and the trial court imposed a mandatory life sentence.

## II. ANALYSIS

### A. Issue 1: Was the evidence identifying appellant as the shooter sufficient to support his conviction?

Appellant's first issue argues that the evidence, excluding accomplice testimony under the accomplice–witness rule, was insufficient to establish that he was the person who shot and killed Scott. The State responds, in part, that appellant erroneously calls two State's witnesses accomplices when no evidence showed they were. We conclude that the evidence (which included non-accomplice and forensic evidence connecting Carson to the offense) was sufficient to support appellant's conviction.

#### 1. Applicable law

When reviewing a sufficiency of the evidence challenge, we consider all the evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd, untimely filed). We defer to the jury's determinations of the witnesses' credibility and the weight given to their testimony because the jury is the sole judge of these matters. *Id*.

The accomplice–witness rule provides that:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). An accomplice is one who participates with a defendant before, during, or after the crime was committed and who acts with the requisite culpable mental state. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). "Participation requires an affirmative act that promotes the commission of the offense with which the defendant is charged." *Id*. "Mere presence at a crime scene does not make an individual an accomplice, nor is an individual an accomplice merely because he has knowledge about a crime and fails to disclose that knowledge." *Id*.

### 2. Application of the law to the facts

Part of our analysis focuses on two testifying eyewitnesses: Miracle Lynch and Derek Morgan. Appellant says that Lynch and Morgan were accomplices; the State disagrees. As shown below, their testimony did not require corroboration because there is no evidence that they were accomplices.

**Harris**

Scott's friend Matt Harris was the first witness to describe the crime. Harris was with Scott the evening of March 21, 2013. At around 7 p.m., Harris drove Scott to a store near Kiest and Cedar Crest to get some food. After they made their purchases, Harris drove them back to Scott's residence. Harris noticed that he was followed by a pick-up truck. Nevertheless, he drove on to Scott's duplex, and the pick-up followed him into that area. When Harris and Scott exited Harris's truck, someone in a ski mask got out of the other truck, pulled out a gun, and fired. Scott ran towards the front of his home, and the gunman went after him. Harris ran the opposite direction and heard another shot. When Harris reached a ditch about fifty or sixty yards from Scott's home, he hid in the ditch for about twenty minutes. When he heard police sirens, he left the ditch and saw Scott surrounded by paramedics. Scott later died at the hospital.

**Lynch**

Miracle Lynch, who was 18 at the time of trial, testified that she was at the Kiest Market in Oak Cliff on March 21, 2013, with several other people. Appellant was there, along with Eric Huckaby,[2] Steven Spriggs, Derek Osaroekee, and Derek Morgan. Other evidence explained that Lynch traveled to the Kiest Market with Huckaby, Spriggs, Osaroekee, and Morgan, and appellant met them there.

While they were there, Spriggs, Osaroekee, Huckaby, and appellant planned a robbery. Lynch and the four others left the store in a pick-up truck and followed another truck. Lynch rode in the back seat with Huckaby[3] and Osaroekee. She saw two guns. Osaroekee had one and appellant had the other. Osaroekee put on a ski mask, and appellant put on a bandanna.

They stopped behind the other truck they had been following, and two men got out of that truck. Osaroekee and appellant got out of their truck and "started opening fire."

When asked what she was doing at the time, Lynch testified, "Scared. Sitting in the car." She also said that Morgan never left the vehicle. She saw appellant chase a man towards the side of the house, and Osaroekee chased the other man towards some woods. After she heard the gunshots, she saw "a body land on the floor" face down, and she saw appellant walking away. Appellant came back to the truck, and someone asked appellant questions like "how much money did he have and what did you get." They drove away to another house, and Lynch called her father and went home.

**Morgan**

---

[2] Although Lynch initially testified that "Eric Huckaby" was present, she later referred to someone with the nickname "Juice," and she said that she wasn't sure if Juice's name was Eric Huckaby. Derek Morgan, whose testimony is discussed below, testified that Huckaby's nickname was Juice.

[3] To be precise, Lynch testified that she rode in the back seat with Juice and "Bravo," who was identified in other testimony as Osaroekee. Huckaby also testified, and he said that he stayed behind at the Kiest Market while the others left to commit the robbery. The discrepancy between his testimony and Lynch's does not affect our analysis.

–4–

Derek Morgan testified that he was a senior in high school on the day of the crime. He, Osaroekee, Huckaby, and Lynch were at Spriggs's house. They went to the Kiest Market in a four-door pick-up truck. While they were there, appellant arrived in his own car. Morgan noticed that Osaroekee had a ski mask, and Morgan put the ski mask on and joked with Osaroekee about it. Then Huckaby ran out of the store saying something like "get the burners," and when Morgan heard about the robbery plan he gave the mask back.

Appellant got in the truck and produced two revolvers, one silver and one black. With Spriggs driving, they followed a white truck that "they said they was going to rob." Appellant handed the silver gun to Osaroekee and kept the black one.

When they pulled into an apartment complex, Morgan suggested that they just turn around and keep going because he did not want any part of a robbery. Nevertheless, Spriggs followed the white truck and pulled up behind it.

Morgan testified that appellant and Osaroekee jumped out of the truck and ran towards the two men in the other truck. Morgan then testified:

> I lost track of what [Osaroekee] was doing. And I seen [appellant], and he went right there behind the building and the dude fell like this on his back, and he came out of his pocket and threw the money. And then I hear the shot go off and [appellant] was standing over them. The shot went off, pow, and then he came back.

The State then questioned Morgan about the crime step by step:

Q.      [D]id you actually see [appellant] holding a gun pointed at this man?

A.      Yes.

Q.      Did you see [appellant] pull the trigger?

A.      Yes.

Q.      Did you hear the gun discharge as [appellant] pulled the trigger?

A.      Yes.

Q.      What happened next as far as what [appellant] was doing?

–5–

> A. Got into the car and they all got into the back seat, and as we was pulling off, he was, like, look, I shot him or whatever.

Morgan said that they drove off after the robbery and went to Spriggs's house and separated from there.

Appellant asserts that Lynch and Morgan were accomplices, but he does not support his argument with any facts or with any record citations. Lynch, Morgan, Huckaby and Spriggs all testified against appellant at trial, but none of them identified any affirmative conduct by Lynch or Morgan that furthered the robbery.

We find no record evidence that either Lynch or Morgan committed any "affirmative act that promote[d] the commission of the offense" with which appellant was charged. *See Cocke*, 201 S.W.3d at 748. "A witness is not an accomplice where there is no evidence that the witness was involved in the planning of or assisted in the preparation for the offense." *Turner v. State*, No. 05-03-01717-CR, 2005 WL 1524586, at *5 (Tex. App.—Dallas June 29, 2005, pet. ref'd) (not designated for publication) (citing *Paredes v. State*, 129 S.W.3d 530, 537–38 (Tex. Crim. App. 2004)); *see also Cocke*, 201 S.W.3d at 748 ("Mere presence at a crime scene does not make an individual an accomplice . . . ."). Because there is no evidence that Lynch and Morgan were accomplices, the accomplice–witness rule does not apply to their testimony.

Other evidence also supported appellant's guilt. Detective Eric Barnes testified that two firearms were later recovered in Desoto. They were tested for DNA. Forensic biologist Amanda Webb testified that DNA recovered from one of the two guns matched appellant's DNA profile and did not match the DNA profiles of Osaroekee or Spriggs. That gun was a black and grey revolver. Morgan had previously testified that appellant had a black revolver, while Osaroekee had a silver one.

Reviewing the testimony of Harris, Lynch, and Morgan and the other evidence presented at trial, in the light most favorable to the verdict, we conclude that the evidence was sufficient to

support the jury's finding that appellant was the person who shot and killed Scott.  We thus resolve appellant's first issue against him.

**B.     Issue 2:  Did the trial court commit reversible error by failing to give the jury an accomplice–witness instruction?**

Appellant's second issue argues that the trial court erred by failing to give the jury an accomplice–witness instruction.  The State concedes error but says the error was harmless.  We agree with the State.

**1.     Applicable law**

If the evidence raises the accomplice–witness rule, the trial court must *sua sponte* instruct the jury about its requirements.  *See Zamora v. State*, 411 S.W.3d 504, 512 & n.4 (Tex. Crim. App. 2013).  If the defendant does not object to an omitted accomplice–witness instruction that is required by the evidence, the error is reversible only if the defendant suffered egregious harm.  *See id*. at 512–13; *see also Zamora v. State*, 432 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Egregious harm arises from error that affects the very basis of the case, depriving the defendant of a valuable right or vitally affecting a defensive theory.  *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Omitting an accomplice–witness instruction egregiously harms a defendant if the jurors would have found the corroborating evidence so unconvincing as to render the State's overall case clearly and significantly less persuasive.  *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).  As the corroborating evidence's strength  increases, the degree of harm decreases.  *See Casanova v. State*, 383 S.W.3d 530, 539–40 (Tex. Crim. App. 2012).

And a failure to give the instruction is generally harmless if the non-accomplice evidence corroborates the accomplice testimony by tending to connect the defendant to the crime.  *Lee v. State*, No. 05-12-01498-CR, 2014 WL 1022380, at *3 (Tex. App.—Dallas Feb. 13, 2014, pet.

ref'd) (mem. op., not designated for publication) (citing *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002), and article 38.14).

### 2. Application of the law to the facts

The State concedes that the trial court should have given the jury an accomplice–witness instruction because two accomplices (Huckaby and Spriggs) testified against appellant. But we conclude that appellant was not egregiously harmed by the error.

As we discussed above, two non-accomplice witnesses corroborated the accomplice testimony against appellant. Lynch saw appellant walking away from the victim's body after the robbery. Morgan saw appellant point his gun at the victim and pull the trigger. This evidence so strongly and directly connected appellant with the crime that we "may safely conclude that the only resultant harm is purely theoretical." *Casanova*, 383 S.W.3d at 540.

Because the non-accomplice testimony was not so unconvincing as to make the State's case clearly and significantly less persuasive, appellant did not suffer egregious harm from the lack of an accomplice–witness instruction. *See Saunders*, 817 S.W.2d at 692; *see also Lee*, 2014 WL 1022380, at *3 (error is generally harmless if the non-accomplice evidence tends to connect the defendant to the offense).

We thus resolve appellant's second issue against him.

### C. Issue 3: Did the trial court reversibly err by not limiting the "intentionally" and "knowingly" definitions to the offense's relevant conduct elements?

Appellant's third issue argues that the trial court erred by not limiting the jury charge's definitions of "intentionally" and "knowingly" to the relevant elements of robbery. The State admits error but says it was harmless. We agree with the State.

### 1. The jury charge and appellant's complaints

The relevant parts of the jury charge are:

Our law provides that a person commits the offense of murder when he intentionally or knowingly causes the death of an individual.

A person commits the offense of capital murder if the person commits murder, as defined above, and the person intentionally commits the murder in the course of committing or attempting to commit robbery.

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property of another, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

"In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the commission of theft.

A person commits the offense of theft if the person unlawfully appropriates property with intent to deprive the owner of the property.

. . .

With regard to the offense of capital murder, a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

With regard to the offense of robbery, a person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

With regard to the offenses [sic] of robbery, a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application paragraph of the charge provided:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that [appellant] intentionally caused the death of Anthony Scott . . . by shooting the deceased with a firearm, a deadly weapon, and [appellant] was then and there in the course of committing or attempting to commit the offense of robbery of [Anthony Scott], then you will find [appellant] guilty of the offense of capital murder as charged in the indictment . . . .

Appellant complains that the trial court did not limit its definitions of "intentionally" and

"knowingly" as to three relevant conduct elements of robbery. Specifically, appellant complains

–9–

that the abstract portion of the charge did not define: (1) "intentionally" specifically in connection with the element of threatening or placing another in fear of imminent bodily injury or death; (2) "with intent" in connection with the element of unlawfully appropriating property; and (3) "knowingly" or "with knowledge" regarding the element of committing robbery in the course of committing theft.

Without conceding appellant's complaints, the State agrees that in the abstract portion of the charge the trial court should have limited the definitions of "intentionally" and "knowingly" to the conduct elements of the offense to which they applied. *See Williams v. State*, No. 05-12-01465-CR, 2014 WL 3756305, at \*6 (Tex. App.—Dallas July 30, 2014, pet. ref'd) (mem. op., not designated for publication) ("The failure to limit the culpable mental state definitions to the conduct element or elements of the offense to which they apply is error.").

**2.      Harmful-error standard**

Appellant did not raise these charge complaints below. We thus reverse only if the error was so egregious that it deprived him of a fair and impartial trial. *Id*. at \*4. In assessing harm, we examine the entire jury charge, the state of the evidence including contested issues, counsel's arguments, and any other relevant information. *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.).

**3.      Application to the facts**

In determining whether there is egregious harm, we may consider the jury charge as a whole, the state of the evidence, the arguments of counsel, and any other elevant information (the "*Almanza* elements"). *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Reviewing the entire record, we conclude that appellant was not egregiously harmed by the failure to limit the definitions of "intentionally" and "knowingly" regarding the elements of robbery in the charge's abstract portion. Aside from brief cross-examinations of the State's

–10–

witnesses, appellant introduced no evidence at trial. During closing arguments, both sides focused on whether the State had proved that appellant acted with the specific intent to kill Scott—not whether appellant had possessed the requisite mental state as to any element of robbery. Neither side referred to the charge's robbery definitions.

Although the jury sent out some notes during deliberations, none of the notes referred to the charge, and none suggested any jury confusion about the charge or its robbery definitions.

The evidence regarding the elements of robbery was very strong. Although appellant says the error caused him egregious harm, he does not explain the nature of that harm.

Based on our record review, we conclude that appellant was not egregiously harmed by the trial court's failure to limit the definitions of "intentionally" and "knowingly" regarding the elements of robbery in the abstract portion of the jury charge. *See Williams*, 2014 WL 3756305, at *6 (appellant was not egregiously harmed by charge's failure to limit culpable-mental-state definitions to relevant conduct elements); *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.—Dallas 1997, pet. ref'd) (omission of culpable mental state from application paragraph did not cause egregious harm because defendant's mental state was not a contested issue).

For these reasons, we resolve appellant's third issue against him.

**D.      Issue 4:  Did the trial court lack jurisdiction because there was no transfer order?**

Appellant's fourth issue argues that the trial court lacked jurisdiction because the grand jury was impaneled in a different court and there is no order of transfer assigning the case to the trial court. We reject this argument for the reasons stated in *Bourque v. State*, 156 S.W.3d 675, 678–79 (Tex. App.—Dallas 2005, pet. ref'd).

**E.      Issue 5:  Does appellant's sentence violate the Eighth Amendment?**

Appellant's fifth issue argues that his automatic life sentence without parole pursuant to Texas Penal Code § 12.31(a) violates his Eighth Amendment right to be free of cruel and

unusual punishment. He says the Eighth Amendment compels the State to engage in individualized sentencing and to permit the introduction of mitigating evidence before imposing a sentence of life without parole.

Appellant did not object in the trial court, so this issue is not preserved for review. *See Kim v. State*, No. 05-14-00138-CR, 2015 WL 1935948, at *5 (Tex. App.—Dallas Apr. 29, 2015, no pet. h.) (mem. op., not designated for publication).

Even had he preserved this argument, we would reject it. The Eighth Amendment generally does not bar mandatory sentencing in non-death-penalty cases, even if the penalty is life without parole. *Murkledove v. State*, 437 S.W.3d 17, 30 (Tex. App.—Fort Worth 2014, pet. dism'd, untimely filed) (citing *Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991)). There is an exception for persons who are under the age of 18 when they commit an offense. *Id*. (citing *Miller v. Alabama*, 132 S. Ct. 2455 (2012)). This exception aside, Texas courts have consistently held that § 12.31(a)'s mandatory life sentence does not violate the Eighth Amendment. *Id*. (collecting cases); *see also Kim*, 2015 WL 1935948, at *5; *Desormeaux v. State*, 362 S.W.3d 233, 240 (Tex. App.—Beaumont 2012, no pet.); *Cienfuegos v. State*, 113 S.W.3d 481, 495–96 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Appellant does not assert that he was under the age of 18 when he committed this crime, so *Miller v. Alabama* is inapplicable.

For these reasons, we conclude that appellant's sentence does not violate the Eighth Amendment and resolve this issue against him.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
140376F.U05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FREDRICK CARSON, Appellant

No. 05-14-00376-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1354167-P.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 8, 2015.